H. N. WELLS, Administrator of J. L. HILL v. W. C. HILL.

*Action on Note—Statute of Limitations—Acknowledgment—New Promise.*

1. The acknowledgment necessary to amount to a new promise to pay a debt barred by the Statute of Limitation must manifest as strong and convincing an intention to renew the debt as if there had been a direct promise to pay it.

2. A promise to pay a debt barred by the Statute of Limitation must not only be in writing, extend to the whole debt, but must be unconditional and to pay in money and not in something else of value.

3. Where the maker of a note wrote to the holder, after it had been barred by the Statute of Limitations, saying that he would not give a mortgage as security, but that he had notes on which he expected to realize sufficient to pay all he owed ; that he expected to pay every dollar of the note, though he supposed the holder purchased it for much less than its value, and that if the holder would give him time he would pay the note with other notes he had ; *Held*, not to be a sufficient acknowledgment and new promise to pay the debt to remove the bar of the Statute of Limitations. (FURCHES, J., dissents, *arguendo*.)

CIVIL ACTION by the plaintiff as the North Carolina administrator of J. L. Hill, (who died domiciled in South Carolina,) against the defendant on a note dated April 27, 1885, for $3,915.86, payable one day after date. There were endorsed credits of $582.94 on February 1, 1888. The action was commenced on 21st June, 1893. The defendant pleaded the bar of the Statute of Limitations.

The plaintiff introduced B. F. Hill, who, together with his brother, W. A. Hill, had administered on the estate of their father (the intestate of plaintiff) in South Carolina, to prove an acknowledgment and new promise by the defendant, as contained in four letters which he and his

brother received from the defendant while they, as admin-
istrators, were in possession of the note.    One of the let-
ters is referred to in the opinion  of the Court and copied
in full in the  dissenting  opinion  of  Associate  Justice
FURCHES.    The others were dated, respectively, April 16,
May 6, and July 27, 1891, and were as follows :

" *B. F. Hill.*

" Sir :   I wrote you a note some time ago and requested
you to let me hear from you about the note that you have
placed in the hands of lawyer for collection.

" I think that I can make the matter all right without
you bringing suit for your money.   I have a good pros-
pect of selling some mineral land this spring, and if I do I
will have the means to settle off my note without any
trouble.   I am corresponding with two large syndicates
about the property.

" Write me at once.   I have been sick for ten weeks,
but will be down as soon as I get straight.

" Yours truly,

(Signed)      " W. C. HILL."

" *B. F. Hill.*

" Dear Sir :—Yours of 22nd of April at hand and will
say in reply if you and Wm. Hill will satisfy the balance
of the heirs and trade for their interest in the note due the
estate it will oblige me very much and save me cost and
trouble.   I have at all times been willing to secure the
debt with mortgage or otherwise so as not to expose my
property to public sale.   I will have to sell some real
estate to get the money anyway and think it will bring
more to sell it privately.   I can pay you now $3,000 or
more in good paper with interest, the notes not due yet,

but have land for security, if you will get up the rest of the claims I will pay you and Wm. (8) eight per cent. on the same.

"I have valuable iron ore, you will see from the inclosed letter from Dr. Williams, agent for the company. I think that I will effect a sale with the company for a good round price that will pay all my debts and have a good surplus left without selling any of my land at home. I am looking for Dr. Williams any day—if we should trade the money will be paid down on receipt of title.

"The company wrote me on the 26th day of April about my ores, and you can see that they are after my property. There is another large syndicate wanting the same property.

"I will let you hear from me soon again. I will not be down until Williams comes or I hear from him.

"You will please write to Mr. Carson and advise him on the matter, and yours truly,

(Signed)     "W. C. HILL."

"P. S.—Write soon."

"*Mr. W. A. & B. F. Hill:*

"I understand that Mr. Carson would be up soon, I presume, to bring action against me concerning my indebtedness. If it will suit you I will give you notes for the whole amount I owe the estate at any time you or Ben may come up. I do not want to put my property up at forced sale, for it would not bring half its value for cash. I learned that you appraised my note doubtful, but I assure you that I can pay dollar for dollar. I can give you good notes with real estate securities. The real estate stands good for the debt until paid with interest from date. I will turn the notes over to you, and you can place them to my credit when collected. I am confident that it was

throug'i my help that your father was successful. See Ben and write me right away. It will be a great deal more satisfaction to me in that way than to send Mr. Carson to see me. I can, any day you or Ben may come, give you these notes as I write you.

" Answer at once.

(Signed)     W. C. Hill.."

His Honor ruled and stated that he would hold and charge the jury that The Code of Civil Procedure had so changed the law in regard to promises sufficient to repel the bar of the statute that now a promise, to have such effect, must be an express promise to pay the debt, and that an acknowledgment, or an implied promise, is insufficient for that purpose ; that the evidence in this case did not show an express promise to pay the debt, and for that reason the jury should answer "No" to the issue submitted to them in this case, to-wit: " Is the defendant indebted to the plaintiff ? and, if so, in what amount ?" and that the plaintiff cannot recover in this action. At this intimation of the judge the plaintiff excepted, and in deference thereto submitted to a non-suit and appealed.

*Messrs. F. A. Sondley* and *J. M. Moody*, for plaintiff (appellant).

*Messrs. R. D. Gilmer* and *Ferguson & Ferguson*, for defendant.

Montgomery, J. : It is admitted that the note sued on is barred by the Statute of Limitations unless the remedy to collect has been revived by the contents of four letters written by the defendant, which letters the plaintiff alleges contain a new promise to continue the liability of the defendant. The letters without doubt acknowledge the debt, and it was argued for the plaintiff that in such case the law implies a promise to pay. This Court has decided

to the contrary. In *Simonton* v. *Clark*, 65 N. C., 525, it was said : " A mere acknowledgment of the debt is not sufficient to repel the statute, but there must be such facts and circumstances as show that the debtor recognized a present subsisting liability and manifested an intention to assume or renew the obligation." We are of the opinion that this means that the acknowledgment of a debt, which would be sufficient to repel the statute, must manifest an intention to renew the debt as strong and convincing as if there had been a direct promise to pay it. This principle, we think, runs through all the decisions of this Court on this subject. The decision in the last-named case was made under the old law, it is true, but this Court has held in *Royster* v. *Farrell*, 115 N. C., 306, that " *The Code* has not altered at all the effect of a new promise or acknowldgement." Section 172 (Lord Tenderden's Act) is merely a rule of evidence enacted to prevent fraud and perjury. The original Statute of Limitations (21 James I, Ch. 16) had no provision as to new promises and acknowledgments. The courts made the law on this subject, and made it apply to all causes of action that rested on a promise. In *Riggs* v. *Roberts*, 85 N. C., 151, it was decided that an unaccepted offer to pay a debt by a conveyance of land is not such a recognition of a subsisting liability as in law will imply a promise to pay it. In *Greenleaf* v. *Railroad*, 91 N. C., 33, this Court declared that the promise must be in writing, extend to the whole debt, and must be to pay in money and not in something else of value. The promise to pay the debt, too, must be unconditional. *Taylor* v. *Miller*, 113 N. C., 340 ; *Greenleaf* v. *R. Co.*, *supra*. Now, on applying these principles to the facts in this case, as they appear in the letters of the defendant, we find the acknowledgment of the debt therein contained is complete. But we find also, running through

all the letters, that the promise to pay is conditional; tha it is made to pay in notes secured by mortgages on lands which he hoped and intended to sell in the future—the notes to be given by the purchasers of the lands and secured by mortgage on the same. He concluded his last letter as follows: "If you will only give me time, I will, at any time you or Ben may come, turn the notes over to you for the full amount of my note to be credited on my note. I do not think it will do any good for you to send a lawyer to see me, as I will not do any more than I have promised to do. I have disposed of my property that I offered Ben, and have only notes to secure you with now." While his Honor's charge might not have been in the strictest sense correct, yet we agree with him that the plaintiff was not entitled to recover.

No Error.

FURCHES, J. (dissenting): I do not concur in the opinion of the Court. This is an action of debt upon a plain note of hand for $3,915.86, dated April 27, 1885, and this action was commenced on the _____ day of _____, 1893. The execution of the note, and that the same has not been paid, are admitted by defendant. But he pleaded and relies on the Statute of Limitations as a bar to plaintiff's recovery. To rebut the bar of the statute, the plaintiff offered in evidence four letters from the defendant. The last one of these letters is quoted from in the opinion of the Court. But it seems to me that the most material part of this letter is omitted. Therefore I think it best to reproduce the whole letter, thinking we may better understand the defendant's hand if we see the whole of it than we can if we only see a part—especially if the index finger is left off, as seems to be the case here. The letter is as follows: "Crabtree, N. C., August 3, 1891. Mr. W. A. Hill, Enoree, S. C. Yours of the 29th to hand.

In reply will say I will not give you any mortgage. I will secure you as I wrote you. I have notes that will pay every dollar that I owe, with land securities. If that will not satisfy you, you can send Mr. Carson or any other lawyer you may wish. I presume you did not give very much for my note, as you appraised my note doubtful. But don't understand me to say that I do not mean to pay, for I expect to pay every dollar of it. If you only give me time, I will, at any time you and Ben may come, turn the notes over to you for the full amount of my note, to be credited on my note. I do not think it will do any good for you to send a lawyer to see me, as I will not do any more than I have promised to do. I have disposed of my property· that I offered Ben, and have got only notes to secure you with now. Show this letter, and also the other I wrote you, to Ben, and see what he may say, and write me at once. Yours, W. C. Hill."

It will be seen that in this letter the defendant uses the following language—a sentence not quoted in the opinion of the Court : " But don't understand me to say that I do not mean to pay, for I expect to pay every dollar of it." This, in my opinion, is an explicit acknowledgment of the debt, from which the law will infer a promise to pay, and is 'itself a promise to pay. And either an acknowledgment or a promise to pay is, in my opinion, sufficient to rebut the bar of the Statute of Limitations. It is held by this Court in *Royster* v. *Farrell*, 115 N. C., 306, that the statute requiring the acknowledgment or promise to be in writing is but a rule of evidence, like the Statute of Frauds, and does not change the law as to what shall constitute an acknowledgment or promise to rebut the Statute of Limitations. And, while this is true, it is also a legislative recognition of the existing law, that the operation of the statute may be rebutted by an acknowledgment of the

debt. If not, why should the statute say, in the very first sentence, and being the second word in the statute, that " *no acknowledgment* or promise shall be received as evidence of a new or continuing contract," &c., if it had not been the law before? In my opinion, it necessarily implied that an explicit acknowledgment of a subsisting debt like this, where there is no uncertainty as to date or amount, will rebut the operation of the statute. But, whether this be so or not, it is held in *Royster* v. *Farrell*, *supra*, that it requires no more since the statute, Section 172 of *The Code*, to rebut the operation of the statute than it did before. It may be that our decisions are not altogether uniform as to what is required. This will be found upon examination to be more in appearance than in reality. But our reported cases will show that, from the time of the first-published opinions to the present, there has been a recognition of the principle that the statute might be rebutted by an acknowledgment of the debt. There has been much discussion as to what was a sufficient acknowledgment to do this. But it has been almost, if not quite, uniformly held that it might be done.

The cases in which this doctrine has been held are too numerous f r me to undertake to cite in this opinion. But the earlier opinions may be found in the second volume of Battle's Digest, commencing on page 877. I will only undertake to give a few of them :

" An acknowledgment to an executor will prevent the bar of the statute as well as when made to the testator." *Billews* v. *Boggan*, 1 Haywood, 13 (18). " To repel the statute, there must be an acknowledgment of the debt, not simply of a fact which may show that the debt is unsatisfied." *Ferguson* v. *Taylor*, 1 Hay., 20. A defendant wrote to the plaintiff : " I would rather come to a settlement, although I should allow the account as insisted

on by you, rather than wait the event of a lawsuit," and it was held that these words took the case out of the statute. *Ferguson* v. *Fitt*, 1 Haywood, 239 (274). "An acknowledgment by one partner, made after the dissolution of the firm, will prevent the operation of the statute on the claim existing against the partnership." *McIntyre* v. *Oliver*, 2 Hawks., 209; *Walton* v. *Robinson*, 5 Ired., 341. "An acknowledgment, or promise, to repel the Statute of Limitations must be distinct and explicit, and plainly refer to the debt in question." *Smallwood* v. *Smallwood*, 2 Dev. & Bat., 330. "When the new promise is conditional, upon the performance of the condition, it is evidence of a previous absolute promise." *Falls* v. *Sherrill*, 2 Dev. & B., 371. "In order to repel the Statute of Limitations, there must be either an express promise to pay, or an explicit acknowledgment of a subsisting debt." *Maskin* v. *Waugh*, 2 Dev. & Bat., 517.

The older reports are full of such cases. I know it has been said in some of the more recent cases that the courts do not look upon the Statute of Limitations with the disfavor they once did. But I am satisfied that no man, claiming to be a gentleman, ever pleaded the Statute of Limitations against the collection of a just debt, for which he had received value, without feeling he had done a dishonorable thing, and without lowering himself in his own estimation.

I will now consider some of the more recent decisions: In *Vass* v. *Conrad*, 7 Jones, 87, it is said there must be a promise to pay, or an *acknowledgment* of the debt. In *Glensey* v. *Fleming*, 4 Dev. & Bat., 129, it is said there must be a promise to pay, or an *acknowledgment* of a subsisting debt, by the debtor, by which a promise to pay is implied. In *Henly* v. *Lanier*, 75 N. C., 172, BYNUM, J., delivering the opinion of the Court, says

the "*acknowledgment* or promise to pay must be in writing." In *Taylor* v. *Miller*, 113 N. C., 340, the defendant Miller, writing to Gaither, the attorney of plaintiff, in reply to a letter from Gaither, says: " Your letter received. I have been to town twice to see you, but you were not in. I propose to settle both of your claims the first of next month, which I hope will be satisfactory. Will see you in person soon." And the Court construed the word " propose " to mean promise, and the word " settle " to mean pay, and held that it renewed a note then barred, and rebutted the operation of the Statute of Limitations. And Justice McRae, in the discussion of the case on page 343, uses this language: " While either of these qualifying words alone would be applicable to the promise or *acknowledgment* to take the case out of the Statute of Limitations, &c." " The law speaks for itself : ' no *acknowledgment* or promise shall be received as evidence of a new or continuing contract, &c.' "—quoting from the statute, Section 172 of *The Code*. In *Royster* v. *Farrell*, 115 N. C., at p. 309, Justice Burwell uses this language : " It was argued before us that while a written *acknowledgment* of the debt would take it out of the operation of the Statute of Limitations, *only a promise* could have that effect on the right to foreclose a mortgage. A written acknowledgment is as effective in the one case as in the other." " *The Code* has not altered at all the effect of a new promise or acknowledgment." *Taylor* v. *Miller*, and *Royster* v. *Farrell*, are the two latest expressions of this Court upon the effect of an acknowledgment or new promise as a bar to the operation of the Statute of Limitations.

I admit that *Simonton* v. *Clark*, 65 N. C., 525, quoted and relied upon in the opinion of the Court, tends to sustain that opinion, if nothing more appeared in the defendant's letter of August 3d, 1891, than is quoted in the

opinion of the Court—that there was nothing in the letter except an offer to pay in notes, but to my mind this is not the case, as I think I have shown from the letter itself. *Simonton* v. *Clark* is put on the ground that plaintiff's intestate only intended to pay in Confederate money, "which was then plentiful;" that plaintiff's intestate refused this and demanded specie, which proposition was refused. And the Court say that this was evidence that he did not intend to pay the debt in any other way, but intended to rely on the Statute of Limitations. And whether this case is right or not, to my mind it is clearly distinguishable from the one before the Court. It is true that the Judge delivering the opinion of the Court uses this language: "That a mere acknowledgment of a debt is not sufficient to repel the statute; but there must be sufficient facts and circumstances to show that the debtor recognized a present subsisting liability, and manifested an intention to assume or renew the obligation." This case, to my mind, recognized the fact that the operation of the bar might be rebutted by an acknowledgement. But the Court hold that the facts shown in this case do not do so— "a mere acknowledgment." This will not be sufficient, if the circumstances connected with the acknowledgment show that the defendant did not intend to pay, as in *McGlensey* v. *Fleming, supra*, and other cases, where the promise which the law implies from the acknowledgment is rebutted by the action of the party making the acknowledgment; as, where a debtor offers to pay a less amount than the debt calls for, but says, "if you don't take this, I will plead the statute." This is an acknowledgment of the debt. But the assumption that the law would imply is rebutted by what the debtor says at the time he makes the acknowledgment. But this rule does not apply in this case. The fact that a debtor offered to pay in notes

WELLS *v*. HILL.

or land, which was not accepted, cannot defeat a direct acknowledgment or promise to pay. Suppose Clark, in the case of *Simonton* v. *Clark*, *supra*, after Miller, plaintiff's intestate, had refused to take the Confederate money, had said to the intestate "But don't understand me to say that I do not mean to pay, for I expect to pay every dollar of it," can it be supposed that the Court would have said that "no intention was in any way shown of assuming or renewing the obligation?" So, without extending this discussion, my opinion is that *Simonton* v. *Clark* is not in conflict with this opinion; that the language used in defendant's letter above quoted—"But don't understand me to say that I do not mean to pay, for I expect to pay every dollar of it"—is much stronger than the language used by the defendant in *Taylor* v. *Miller*—"I propose to settle;" that under the great weight of authority, as well as Section 172 of *The Code*, the bar of the Statute of Limitations in my opinion is rebutted in this case, and there was error in the ruling of the Court.

FAIRCLOTH, C. J.: I concur in the dissenting opinion.