The action, instituted apparently in 1917, was to recover the sum of $283.95, for money loaned by plaintiffs to defendant's intestate.
There was allegation with evidence on part of plaintiff tending to show that, in the years 1905-1908, and 1910, plaintiff loaned to intestate, who was her mother, different sums aggregating the amount in question, and in the fall of 1916, not long before intestate's death, she executed a paper-writing, acknowledging said indebtedness in terms as follows:
"Sept. 18, 1916: This is to certify that I, Mary J. Richmond, owe my daughter, Bettie M. Phillips, $283.95 (two hundred and eighty-three dollars and ninety-five cents) for borrowed money at (411) different times. And Bettie is to have $500 (five hundred dollars) out of my estate as a gift at my death, as the rest of the children has had something and Bettie nothing. Willie L. Richmond and Johnnie D. Richmond each got land. And Mary Fannie Chambers got a $1,000 (thousand dollars), $500 (five hundred) as a gift and $500 (five hundred) to take care of me as long as I live.
"This I witness my hand and seal.
(Signed) MARY J. RICHMOND."
That some time after intestate's death and defendant's qualification *Page 437 
as executor, plaintiff presented her claim and payment having been refused, plaintiff instituted the present suit.
There was a denial of indebtedness and of execution of paper-writing on the part of defendant and also plea of the statute of limitations.
Plaintiff presented the paper-writing and offered evidence tending to show that the signature was in the handwriting of her mother, the intestate. T. B. Peirce, a witness, cashier of a bank in Durham, qualified as an expert in the handwriting of intestate, testified that such signature was in her handwriting. On cross examination he admitted there were some minor differences, but adhered to his opinion that the signature was in the handwriting of intestate, and plaintiff herself testified that such signature was in the handwriting of the intestate.
It was insisted for defendant that the paper-writing in question was not sufficient to repel the bar of the statute of limitations otherwise existent against plaintiff's claim, and for that reason moved for judgment of nonsuit. Motion overruled and defendant excepted.
The cause was submitted to the jury, who rendered verdict as follows:
1. Is the signature to the paper-writing, dated 18 September 1916, Exhibit 2, offered in evidence by the plaintiff, that of defendant's intestate, Mary J. Richmond? Answer: "Yes".
2. What amount, if any, is plaintiff entitled to recover of the defendant? Answer: "$283.95 and interest."
The court charged the jury and defendant made exceptions as follows:
"Upon the view of law which the court takes in this case, two issues are submitted to you:
"1. Is the signature to the paper-writing dated 18 September, 1916 (Exhibit No. 2), offered by plaintiff that of defendant's intestate. Mary J. Richmond? (a) The court charges you if you find the facts to be as testified to by the witnesses, you will answer that issue `Yes,' the evidence being that the signature is that of Mary J. Richmond. If you so find by your direction and with your consent I will write that answer for, `Yes.'" (b)
To the foregoing part of his Honor's charge between the letters (a) and (b) the defendant excepted and assigns the same as error.
"2. What amount is plaintiff entitled to recover of defendant? (412) (c) If you find the facts to be as testified you will answer the second issue $283.95. If you so find, by your direction and with your consent I will write the figures $283.95 for you." (d)
To the foregoing part of his Honor's charge between the letters (c) and (d) the defendant excepted and assigns the same as error. *Page 438 
Judgment on the verdict and defendant excepted and appealed, assigning for error the ruling of the court as to the paper-writing being sufficient to repel the bar of the statute of limitations, the errors noted to the charge.
Our statute on the question of preventing the bar of the statute of limitations by reason of a new promise, Revisal, sec. 371, is in terms as follows:
"No acknowledgment or promise shall be received as evidence of a new or continuing contract, from which the statute of limitations shall run, unless the same be contained in some writing signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest."
Authority on the subject is to the effect that it was not the meaning of this law in its terms or purpose to make any change in the character or quality of the acknowledgment or promise heretofore required to repel the bar of the statute except that the same should be "in some writing signed by the party to be charged." Apart from this requirement, therefore, our decisions both before and since are apposite to the true interpretation of the law.
This position was fully recognized in the recent case of Shoe Store Co.v. Wiseman, 174 N.C. 716, and in that and many other well considered cases on the subject, it is held that, in order to revive a debt which is barred by the statute, there should be an express unconditional promise to pay the same or that there should be a definite, unqualified acknowledgment of the debt as a subsisting obligation and from which the law will imply a promise to pay. Royster Co. v. Farrel and Wife, 115 N.C. 306; Taylor v. Miller,113 N.C. 340; Faison v. Bowden, 72 N.C. 405; Moore v. Hyman, 35 N.C. 272;Smith v. Leeper, 32 N.C. 86.
In Faison v. Bowden, supra, it is held: "The new promise necessary to repel the bar of the statute of limitations must be definite and show the nature and amount of the debt; or must distinctly refer to some writing or to some other means by which the nature and (413) amount of the debt can be ascertained. Or there must be an acknowledgment of a present subsisting debt, equally definite and certain, from which a promise to pay such debt may be implied."
And in Smith v. Leeper, 32 N.C. 86, the true principle applicable is stated as follows: "To repel the statute of limitations, a promise to *Page 439 
pay must be proven, either express or implied. (2) The law will imply a promise when there is an acknowledgment of a subsisting debt, unless there be something to rebut the implication."
The same position has been approved in the decisions of the Supreme Court of the United States dealing with the question. Thus, in Shepherd v.Thompson, 122 U.S. at 235, Associate Justice Gray, delivering the opinion said: "But in order to continue or to revive the cause of action, after it would otherwise have been barred by the statute, there must be either an express promise of the debtor to pay that debt or else an express acknowledgment of the debt, from which his promise to pay it may be inferred. A mere acknowledgment, though in writing, of the debt as having once existed, is not sufficient to raise an implication of such a new promise. To have this effect, there must be a distinct and unequivocal acknowledgment of the debt so still subsisting as a personal obligation of the debtor."
It is the principle very generally prevailing on the subject and would seem to be required with us by the phraseology of the statute itself, which clearly recognizes that either a promise to pay or acknowledgment of the debt as an existent obligation will suffice, unless there is something to qualify the express promise or to repel that which the law would imply from the definite acknowledgment of the debt as a subsisting obligation.
In the cases cited and relied upon by defendant, chiefly Wells v. Hill,118 N.C. 900, and Helm Co., v. Griffin, 112 N.C. 356, the headnotes and some expressions in the opinions give countenance to the proposition that, in such cases, there should be both an acknowledgment and a direct promise to pay, but a careful examination of the facts will disclose that in the latter, there was no acknowledgment of any debt as a subsisting obligation, but only that the defendant had formerly owed the plaintiff and the language of the instrument gave clear indication that no promise to renew the obligation or pay the same was intended. And in Wells v. Hill, supra, while there may have been an acknowledgment of the debt, the promise to pay was indefinite and conditional and the entire correspondence, the basis of the claim for a renewal, showed that there was no intent on the part of the promisor to recognize the debt as a subsisting obligation or to make an unconditional promise to pay.
On the facts presented, therefore, both of those cases were well decided and neither, when properly interpreted, is opposed to the position that it will suffice to repel the bar when there is a (414) direct promise to pay the debt, written and signed by the party to be charged or a definite acknowledgment of the debt as a subsisting *Page 440 
obligation and nothing in the writing to qualify or repel the promise that the law will imply from such an acknowledgment. And, in the present case, we fully concur in his Honor's view that the paper-writing contains a definite acknowledgment of the debt and, on its face, gives clear indication that it was intended as a renewal of the obligation as required by the statute.
While we approve the ruling of his Honor in the respect suggested, we are of opinion that there must be a new trial of the cause by reason of an erroneous instruction on the issues submitted. It is the fixed principle in our system of procedure, both by statute and approved precedent, that a judge in charging a jury shall not give an opinion whether a fact is fully or sufficiently proven, "such matter being the true office and province of the jury." Revisal, sec. 535. And it has been held with us in many well considered cases that the inhibition extends not only to the ultimate facts, but to all the essential inferences of fact arising from the testimony and upon which the ultimate facts necessarily depend. This principle, recognized by the Court in Bank v. Pugh, 8 N.C. 198, has been again and again approved in our cases. Forsyth v. Oil Mill, 167 N.C. 179;State v. R. R., 149 N.C. 508-512; State v. Daniels, 134 N.C. 671. In theForsyth case, the correct principle is stated by Brown, J., as follows: "The converse of the rule is true and for a stronger reason a verdict can never be directed in favor of a plaintiff when there is any evidence from which the jury may find contrary to the plaintiff's contention or where there is evidence that will justify an inference to the contrary of such contention."
And in State v. R. R., supra, the Court said: "When there is conflict in the evidence on any essential feature of the charge (here an indictment), or when, though there be no such conflict, more than one inference of fact is permissible, and any one of these make for defendant's innocence, the question for such guilt or innocence is for the jury, and not for the court."
In the case presented the witness Peirce and the plaintiff herself, by the proper and legal interpretation of her evidence, gave it as their opinion that the signature to the paper-writing in controversy was in the handwriting of the intestate. The ultimate fact was whether she signed it or not. The evidence, consisting of these opinions, is relevant and permits the conclusion that intestate signed the paper, but on the record this was an inference of fact which the jury might or might not deduce from the testimony and which they should be allowed to determine without expression of opinion from the judge. For this error there must be a new trial of the cause, and it is so ordered.
New trial. *Page 441 
 Cited: Irvin v. Harris, 182 N.C. 655; Tucker v. Ashcraft, 189 N.C. 547;Smith v. Gordon, 204 N.C. 698; Fertilizer Co., v. Hardee, 211 N.C. 656;Trust Co., v. Lumber Co., 221 N.C. 94, 95; Haines v. Clark, 230 N.C. 752;McGowan v. Beach, 242 N.C. 77.
(415)